IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) Case No. CR-11-303-F |
| | ) |
| KEEGAN VAN TUYL, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM**

The court has preliminarily reviewed the Sentencing Memorandum of the United States, doc. no. 24, filed on March 23, 2012. In particular, the court has reviewed exhibit 14 to the government's sentencing memorandum. Exhibit 14 to the government's sentencing memorandum purports to be a "voluntary statement" dated March 5, 2012. The document purports to be a handwritten statement on a form provided by the Office of the Grady County Sheriff. The defendant is housed at the Grady County Jail. Some of the entries on the voluntary statement form have been redacted. The handwritten narrative in the body of the form states as follows (where the following transcription indicates "redacted," the redaction is in the document as filed with the court):

> When I  REDACTED  to Grady County I met Keegan  REDACTED. He said it was good to have another  REDACTED  that he controlled the pod and I had no cause to worry. He said that they wouldn't allow blacks to be put in the pod or they would "smash" them. He also said the Mexicans were afraid of him so I didn't have to worry about them. Over the next few days he told me about his white power group that he ran and their plans to disrupt the establishment. He also described assaults that they had made in the past. Over the next week he got into details of his assault of the child molester at the OKC transfer center. He said he didn't cause that much damage to the guy 'just an

eye socket' but that his Judge 'Friot' chose to convict him of a much higher charge of assault. He said that Friot was no better than the child molester in fact worse because he was defending him. He said that Friot will pay for this and that he would make sure that he was "smashed" much worse than the "____". He also wanted the public to know that Friot was a protector of child molesters so he drafted a letter to the Daily Oklahoman.   REDACTED   He said he would do everything in his power to "destroy" Friot. He then went into how he had a lot of "resources" that he would use to make this happen.   REDACTED    he was training and recruiting new members. He told me many times that he couldn't wait to get back out so that he could take his movement forward. He said what set his chapters out is that they didn't just talk about things they went out and hurt people. He then went into some of the things that new members must do such as smash someone that they pick out at random.   REDACTED

As can be seen, the statement set forth in Exhibit 14 was purportedly given by another inmate. The inmate attributes certain comments to the defendant. The court makes no finding one way or the other as to the authenticity of the document or as to whether, if the document is authentic, the defendant actually made the statements attributed to him. However, assuming, for present purposes, that the document is authentic and that it accurately represents statements made by the defendant, the court has concluded that it is appropriate to address the question of whether recusal by the undersigned judge is required.[1]

The court's analysis is governed by 28 U.S.C. § 455 (predominantly § 455(a)) and by the relevant authorities from the 10th Circuit, including United States v. Pearson, 203 F.3d 1243 (10th Cir. 2000) and United States v. Greenspan, 26 F.3d 1001 (10th Cir. 1994).

Under 28 U.S.C. § 455(a), a judge is required to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned." The issue, under § 455(a) is whether "sufficient factual grounds exist to cause a reasonable,

---

[1] A judge has "a continuing duty to recuse" if sufficient factual grounds for recusal exist. United States v. Pearson, 203 F.3d 1243, 1277 (10th Cir. 2000).

objective person, knowing all the relevant facts, to question the judge's impartiality." Pearson, 203 F.3d at 1277. What matters is not the reality of bias or prejudice but its appearance. *Id.* (citing Liteky v. United States, 510 U.S. 540, at 548 (1994)).

Soon after Liteky was decided by the Supreme Court, the Tenth Circuit had occasion to apply § 554(a) in the context of a threat made against a district judge. United States v. Greenspan, 26 F.3d 1001 (1994).

Greenspan involved "an investigation by the Federal Bureau of Investigation into allegations that defendant had conspired kill the trial judge or members of his family." *Id.* at 1005. The trial judge clearly took the matter seriously. He expedited the sentencing hearing in order to "get [Greenspan] into the federal penitentiary system immediately, where he can be monitored more closely." *Id.* (quoting the trial judge). Although the defendant's counsel had been appointed only two days before the expedited sentencing date, the trial judge refused to continue the sentencing hearing – a fact which would strongly suggest to an objective observer that the trial judge took the matter seriously and personally. Moreover, the Court of Appeals, in discussing the situation confronting the trial court, noted that it appeared that "the alleged conspiracy to kill the trial judge and his family spanned several states and included a number of persons who had allegedly contributed large sums of money for the hiring of a 'hitman'." *Id.*

Obviously, in Greenspan, there were good reasons for which it was readily apparent both to the trial judge and to the Court of Appeals that the threat which confronted the trial court was not fanciful. In that vein, the Court of Appeals noted that there was nothing in the record to suggest that the threat was a ruse by the defendant in an effort to force recusal for the purpose of getting a different judge. *Id.* at 1006. In concluding that the trial judge should have recused, the court pointedly noted that the death threat was "apparently genuine," and that the trial judge

"obviously took the threat very seriously." *Id.* at 1007. The Court of Appeals accordingly remanded the case for resentencing.

The key facts in <u>Greenspan</u> – an apparently genuine threat that the trial judge obviously took very seriously – would, without more, "cause a reasonable, objective person, knowing all of the relevant facts, to question the judge's impartiality." <u>Pearson</u>, 203 F.3d at 1277. The case at bar is different.

In this case, it should be noted, as an initial matter, that the defendant is obviously an unstable person, as was plainly demonstrated by the evidence at the trial of this case. Unstable individuals will make statements like the statements, quoted above, which the court assumes, for present purposes, that the defendant made. Assuming that those statements should be construed to constitute a threat (and that is not a foregone conclusion), and assuming further that the defendant, if he made the statements, did not intend the substance of his statements to be made known to the authorities (which would trigger the "ruse" rule discussed by the court in <u>Greenspan</u>), the fact is that the statements attributed to the defendant are not statements which, upon reading, produce any sense of reality.[2] There is a palpable qualitative difference between the statements attributed to the defendant in this case and the evidence, in <u>Greenspan</u>, of an extant, multi-participant interstate plot to kill the judge and his family.

In the absence of a sense that these statements may well evidence a genuine threat (one that might amount to something more than a rant or braggadocio by an unstable individual), the objective standard of § 455(a) is not satisfied. The sum of the matter is that, for a multitude of reasons, the statements attributed to the defendant can, and should, be regarded as being – at best – mere puffery from one inmate to

---

[2] The record does not suggest, and the court is not otherwise aware, that the defendant or anyone else has done anything to carry out the intentions suggested by the statements attributed to the defendant.

another (if the statements were made at all). The court concludes, applying the § 455(a) standard, that a reasonable, objective person, made aware of the relevant facts, would not question the impartiality of the undersigned in these circumstances. For these reasons, and because "a judge has as much obligation not to recuse himself where there is no reason to do so as he does to recuse himself when the converse is true," Greenspan at 1005, the court concludes that nothing in the materials which have been brought to the court's attention requires recusal.

     Dated April 5, 2012.

                               STEPHEN P. FRIOT
                               UNITED STATES DISTRICT JUDGE

11-0303p004.wpd